IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-cv-00548-GCM-WCM

| | |
|---|---|
| MATTHEW EDEN, ) | |
| ) | |
| Plaintiff, ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| v. ) | |
| ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I.  Procedural Background

In September of 2019, Matthew Eden ("Plaintiff") filed applications for disability insurance benefits and supplemental security income alleging disability beginning May 1, 2014. Transcript of the Administrative Record ("AR") 202-208; see also AR 12; AR 736.

On March 11, 2021, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 9-28.

1

Plaintiff subsequently sought review of the Commissioner's decision in this district, and, on May 6, 2022, a consent motion by the Commissioner to remand for further administrative proceedings was granted. AR 790-791.

On May 30, 2023, following another administrative hearing at which Plaintiff appeared and testified, a different ALJ issued an unfavorable decision. AR 733-757. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairment of major depressive disorder. AR 739. After determining that Plaintiff's impairment did not meet or medically equal any of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to maintain concentration to understand, remember, and carry out simple and detailed tasks with occasional decision making and occasional changes to the work duties. The claimant is able to frequently interact with coworkers and supervisors, with only occasional interaction with the general public.

AR 741.

Applying this RFC, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 748-750.

### III. Plaintiff's Allegation of Error

Plaintiff contends that the ALJ improperly relied on "normal" objective medical evidence when evaluating his subjective psychological symptoms and, relatedly, incorrectly implied that Plaintiff experienced improvement in his psychological symptoms when he complied with his treatment.

### IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper

3

legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Discussion

### A. Evaluation of Plaintiff's Subjective Symptoms

The Fourth Circuit has held that symptoms of major depressive disorder ("MDD") "are 'entirely subjective'" and, therefore, an ALJ may not "disregard [a claimant's] statements about the intensity, persistence, and limiting effects of [MDD] symptoms *solely* because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Shelley C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341, 361, 360 (4th Cir. 2023) (emphasis added); see also Snyder v. Commissioner of Social Security, No. 1:23-CV-00308-KDB, 2024 WL 5040933, at *5 (W.D.N.C. Dec. 9, 2024) ("when diseases do not produce objective medical evidence, the lack thereof may not be used to discredit a claimant's subjective symptoms of that

4

disease. Objective evidence includes normal clinical and laboratory results.") (citing Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 97 (4th Cir. 2020)).

An ALJ may, however, consider additional medical information and other evidence that is contrary to a claimant's allegations. See Dowell v. Bisignano, Commissioner of Social Security, No. 1:24-CV-00123-KDB-DCK, 2025 WL 2083197, at *5 (W.D.N.C. July 24, 2025) ("'Shelley C. and Arakas prevent ALJs from requiring claimants to provide medical evidence that would be impossible to produce given their specific medical conditions,' but do not disallow the consideration of other evidence contrary to a finding of disability") (citations omitted); Strader v. O'Malley, No. 5:22-CV-367-M-BM, 2024 WL 796523, at *8 (E.D.N.C. Feb. 2, 2024) ("while contradictory medical or other evidence may discredit Plaintiff's subjective statements regarding the limiting effects of her pain [or depression], a mere absence of medical evidence cannot") report and recommendation adopted, No. 5:22-CV-00367-M-BM, 2024 WL 779225 (E.D.N.C. Feb. 26, 2024)).

Here, when developing Plaintiff's RFC, the ALJ first outlined Plaintiff's testimony from both hearings, noting that Plaintiff described his symptoms of depression to include "low morale, poor self-motivation, fatigue, reduced mental focus, memory deficits, loss of enjoyment in leisure activities, sleep disturbances, social deficits, and difficulty completing basic daily activities." AR 742. The ALJ also noted that Plaintiff testified that he experienced "periods

5

of severely reduced functioning" during which he neglected household chores and grooming, that sometimes Plaintiff was "unable to get up for a week" while at other times he had "difficulty a few times per week," and that "numerous psychotropic medications and treatments [had] not significantly improved his mental status." Id. Additionally, the ALJ noted that Plaintiff testified that he may go to a store infrequently, is able to heat simple foods, can drive, and plays "handbells as a hobby with two groups," which requires rehearsals "once or twice per week" as well as multiple concerts during the year. AR at 743.

The ALJ then found that Plaintiff's statements concerning "the intensity, persistence and limiting effects of [his alleged] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record…." AR 743.

Plaintiff correctly points out that, when developing Plaintiff's RFC,[1] the ALJ indicated multiple times that the notes of Plaintiff's treating psychiatrist,

---

[1] To the extent Plaintiff contends that the ALJ relied improperly on objective medical evidence when considering whether Plaintiff's impairment met or medically equaled one of the listed impairments, some courts have been hesitant to extend the reach of Arakas and Shelley C. to other steps of the sequential evaluation process ("SEP"). See Mary W. v. O'Malley, No. 1:23cv128, 2024 WL 1256268, at *10 (M.D.N.C. March 25, 2024) ("to the extent Plaintiff relies on Arakas and Shelley C. to fault the ALJ for considering objective findings on [mental status exams] at steps two and three of the SEP, that argument overextends the reach of those cases") (internal citations omitted).

6

Dr. Fred Caudill, reflected mostly normal mental status exams, even when Plaintiff reported increased symptoms. See AR 743-745.

However, the ALJ also discussed Plaintiff's subjective symptoms – both those indicating improvement and those indicating a decline – as reflected in Dr. Caudill's treatment notes. See AR 743 (citing AR 311 (Plaintiff's reported depression was "at bay despite his 'spotty' compliance" and Plaintiff reported working 25-30 hours per week); AR 310 (Plaintiff indicated that he had been doing well until a couple of months earlier, when things "fell off precipitously"); AR 309 (Plaintiff reported "definitely doing better"); AR 308 (Plaintiff was "doing ok," felt Wellbutrin was "helpful," was in "full-time job search mode," and was performing music in churches); AR 307 (Plaintiff was engaged in "plenty of music opportunities/obligations" and was focused on finding a full-time job)); AR 744 (citing, *inter alia*, AR 332 (Plaintiff had "come close" to acting on suicidal ideation); AR 328 (June 13, 2017 letter signed by Dr. Caudill to Dr. Dan Aquino regarding Plaintiff's lack of "sustained response to multiple treatment regimens…."); AR 447 (Plaintiff's increasing hopelessness); AR 437 (Plaintiff had "definite improvement" with ketamine but such improvement lasted only 24-48 hours); AR 745 (citing AR 899 (Plaintiff reported depression and merely "existing"); AR 897 (Plaintiff reported a "rough few months")).

Further, the ALJ noted that during an exam with a different provider, Plaintiff reported no major depressive episodes, AR 746 (citing AR 626

7

Case 3:24-cv-00548-GCM-WCM   Document 10   Filed 08/13/25   Page 7 of 14

(December 27, 2013 treatment record)), and that despite Plaintiff's reported symptoms, Plaintiff had "not required inpatient psychiatric treatment or partial hospitalization." AR 745.

Finally, the ALJ discussed the opinion evidence in the administrative record.

The ALJ considered Dr. Caudill's various opinions. See AR 744 (citing AR 301 (characterizing Plaintiff's symptoms as "persistent" but "not severe"); AR 347 (indicating that Plaintiff had "subtle" improvement following ECT[2] with some headache and "mild memory problems" but "nothing disruptive to his job or ADLs")); AR 745 (finding Dr. Caudill's opinion (AR 723-724) that Plaintiff had marked limitations in his ability to adapt or manage himself was not persuasive when considered in light of, among other things, Plaintiff's part-time work, participation with his handbell groups, and lack of inpatient treatment); AR 746 (considering Dr. Caudill's statement that Plaintiff's depression had been "unremitting and unresponsive to truly heroic treatment efforts" and that Plaintiff was "fully disabled" but explaining that the letter did not include any functional limitations).

---

[2] "ECT is given to patients with severe, treatment-resistant depression and is performed under general anesthesia, with small electric currents ... passed through the brain, intentionally triggering a brief seizure. ECT seems to cause changes in brain chemistry that can quickly reverse symptoms of certain mental health conditions." Shelley C., 61 F.4th at 349, n. 3 (4th Cir. 2023).

The ALJ also explained that she found certain opinions of the state agency consultants to be persuasive, including Dr. Jacquelyn Harrison's opinion that Plaintiff would be able to adapt to low stress settings and Dr. Jennifer Fulmer's opinion that Plaintiff was moderately limited in his ability to interact with the general public and supervisors and to adhere to basic standards of neatness and cleanliness but was not significantly limited in his ability to get along with peers or coworkers. AR 747.

In sum, although the ALJ noted certain objective medical findings – specifically, the results of Plaintiff's mental status exams – it does not appear that the ALJ disregarded Plaintiff's statements about the intensity, persistence, and limiting effects of his MDD symptoms "solely because the objective medical evidence [did] not substantiate the degree of impairment-related symptoms alleged…." Shelley C. 61 F.4th at 360; see Dowell, 2025 WL 2083197, at *4 (affirming the Commissioner's denial of benefits where, although the ALJ referenced "normal and unremarkable" mental status exams in her summary of the record, the ALJ "devoted significant attention to evaluating and reconciling the discrepancies between Mr. Dowell's reported symptoms, his daily activities, and his own reports of symptom improvement with treatment"); Mary W., 2024 WL 1256268 (finding that the ALJ did not improperly rely entirely on the absence of objective medical evidence to discount plaintiff's symptoms of depression where the ALJ found plaintiff's

9

symptoms lacked consistency with "the medical evidence and other evidence in the record" which included plaintiff's unremarkable or normal findings on mental status exams, plaintiff's numerous social activities and ability to serve as the primary caregiver to her autistic son, and her reports of significant symptom improvement with therapy and medications); cf., Anderson v. O'Malley, No. 5:24-cv-00033-MOC, 2024 WL 3649553, at *5 (W.D.N.C. Aug. 5, 2024) (remanding where the ALJ stated the "objective medical evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to cause more mental limitations than those described above").

### B. Plaintiff's Compliance with Treatment

The Fourth Circuit has explained that "[i]f noncompliance is to be a basis for denying benefits, the Secretary must develop a record establishing by substantial evidence that the claimant's impairment 'is reasonably remediable by the particular individual involved, given ... her social or psychological situation.'" Preston v. Heckler, 769 F.2d 988, 990-91 (4th Cir. 1985); see also Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984) ("before a person is denied benefits for failure to follow prescribed treatment, he will be afforded an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so"); Dickens v. Astrue, 2011 WL 3269422, at *3 (E.D.N.C. July 28, 2011) ("the burden of proof is on the Commissioner to establish unjustified

noncompliance by substantial evidence"); Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017) ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.").

Here, Plaintiff argues that the ALJ "incorrectly implie[d] that [Plaintiff] was noncompliant and that he experienced improvement when compliant" with treatment and medication. Doc. 6 at 11.

The ALJ did refer to certain of Dr. Caudill's notes that mentioned Plaintiff's compliance with treatment. See AR 743 (citing AR 311 ("depressed mood is at bay despite his 'spotty' compliance"); AR 309 (Plaintiff was "definitely doing better" following a month of medication)).[3]

However, the ALJ also cited records that indicated Plaintiff had tried various treatments without success, including records showing that Plaintiff exhibited a lack of sustained response to "any treatment and worsening

---

[3] Although Plaintiff argues that he stopped taking Abilify because he misunderstood his doctor's instructions, the notation regarding this misunderstanding is dated August 11, 2017. See AR 326. The ALJ, though, limited her statement regarding Plaintiff's improvement when he was compliant with treatment to the period prior to June 30, 2015.

symptoms," that Dr. Caudill "continued to change medications" and stopped certain medications due to side effects, and that Plaintiff terminated ECT treatments because those treatments only provided "subtle improvement" and stopped ketamine treatment "due to waning response," AR 744-745.

Further, as discussed above, it appears that the ALJ based her findings regarding Plaintiff's functional limitations on multiple sources, including Plaintiff's reports of subjective symptoms and the opinions of Plaintiff's treating psychiatrist and certain state agency consultants.

Under these circumstances, the undersigned is not persuaded that the ALJ denied Plaintiff's claims based on a finding that Plaintiff was noncompliant with treatment recommendations. See Clark v. Colvin, No. 7:13-cv-115, 2014 WL 5307508, at *3 (E.D.N.C. Oct. 16, 2014) ("The ALJ's credibility assessment, which referenced medical noncompliance but did not solely rely on medical noncompliance to deny benefits, did not violate either [the social security regulations] or Preston.") (citing Holbrook v. Colvin, 521 Fed. Appx. 658, 663, n. 5 (10th Cir. 2013) (unpubl.)).

## VI. Recommendation

The undersigned therefore respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

Signed: August 13, 2025

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).